IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00988-RBJ-KLM

HERIBERTO HUERTA,

    Plaintiff,

v.

JOHN OLIVER, ADX Warden, individually,
PAYNE, S.I.A. Lt., individually,
D. ARMENDARIZ, S.I.S. Tech., individually,
S. JULIAN, Assoc. Warden, individually,
MARTIN MARTINEZ, FBI Agent, individually,
JOHN DOE, name illegible, individually,
IAN CONNORS, individually,
E. PIERCE, S.I.S. Lt., individually, and
RHODES, Lt., individually,

    Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on Defendants' **Consolidated Motion to Dismiss
the Amended Complaint** [#54][1] (the "Motion"). Plaintiff filed a Response [#62] in
opposition to the Motion, and Defendants filed a Reply [#63]. The Motion has been
referred to the undersigned for recommendation pursuant to 28 U.S.C. § 636(b) and
D.C.COLO.LCivR 72.1(c). *See* [#55]. Having reviewed the entire case file and being
sufficiently advised, the Court respectfully **RECOMMENDS** that the Motion [#54] be

_____
    [1] "[#54]" is an example of the convention the Court uses to identify the docket number
assigned to a specific paper by the Court's electronic case filing and management system
(CM/ECF). This convention is used throughout this Recommendation.

**GRANTED**.

## I. Summary of the Case

At all times relevant to this lawsuit, Plaintiff has been a prisoner in the custody of the United State Bureau of Prisons ("BOP"). *Am. Compl.* [#46] ¶ 4. As of the filing of the Amended Complaint on April 19, 2018, Plaintiff was incarcerated at United States Penitentiary-ADX in Florence, Colorado ("USP-Florence"). *Id.* Defendants in this matter consist of eight government officials who have purportedly legally injured Plaintiff in various ways. *Id.* ¶¶ 5-12. Defendant John Oliver ("Oliver") was the Warden at USP-Florence. *Id.* ¶ 5. Defendant Stephan Julian ("Julian") was the Associate Warden at USP-Florence. *Id.* ¶ 8. Defendant David Rhodes ("Rhodes") was a Special Investigations Supervisor ("S.I.S.") at USP-Florence. *Id.* ¶ 12. Defendant Debra Payne ("Payne") was a Special Investigations Agent Lieutenant at USP-Florence. *Id.* ¶ 6. Defendant Daniel Armendariz ("Armendariz") was on the Special Investigations Staff at USP-Florence and was directly supervised by Defendant Payne. *Id.* ¶ 7. Defendant Martin S. Martinez ("Martinez") was an Agent with the Federal Bureau of Investigation ("F.B.I.") in San Antonio, Texas. *Id.* ¶ 9. Defendant Ian Connors ("Connors") was the Administrator of National Inmate Appeals. *Id.* ¶ 10. Defendant Edward Ray Pierce ("Pierce") was a S.I.S. at the United States Penitentiary in Leavenworth, Kansas. *Id.* ¶ 11. All eight Defendants are sued in their individual capacities only. *Id.* ¶ 13.

Plaintiff has been incarcerated for over twenty-three years. *Id.* at 1. Defendants "identify him as the founder and president of a prison gang called the Texas Mexican Mafia or 'Mexikanemi,'" which, according to Plaintiff, has caused Defendants to "target, treat, and

injure" Plaintiff more than other inmates at USP-Florence. *Id.* ¶ 17. Plaintiff states that he is a "class of one," or, alternatively, that he "belongs to a class of inmates targeted because of their perceived membership with a disfavored organization from before their conviction and custodial sentence . . . ." *Id.* ¶ 19.

Plaintiff here asserts seven "claims" relating to various aspects of his incarceration, but those claims are grouped around events rather than clearly stating each of his causes of action. *See id.* ¶¶ 23-115. Oddly, and as Defendants point out, *see Motion* [#54] at 25, Plaintiff's original Complaint [#1] much more clearly presents the causes of action he is asserting in connection with each event than is demonstrated by the Amended Complaint [#46]. The Response [#62] does little to provide additional clarity regarding the asserted causes of action. The Court notes that Plaintiff is represented by counsel, and therefore the Amended Complaint, as a formal pleading drafted by a lawyer, is held to a more stringent standard by the Court than the liberal construction given to a pro se litigant's pleadings. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Thus, the Court does not infer or address any claims that are not explicitly made in the Amended Complaint [#46]. The claims at issue, therefore, are as follows:

(1) "Complaint -1- Administrative Remedy Case No. 818050": violations of the First, Fifth, and Eighth Amendments and 42 U.S.C. § 1985, asserted against Defendants Pierce, Oliver, and Julian ("Claim One"). *Am. Compl.* [#46] ¶¶ 23-53.

(2) "Complaint -2- Administrative Remedy Case No. 811066": violations of the First Amendment and 42 U.S.C. § 1985, asserted against Defendants Rhodes, Payne, and Armendariz ("Claim Two"). *Id.* ¶¶ 54-59.

(3) "Complaint -3- Administrative Remedy Case No. 818852": violations of the

Fourteenth Amendment and 42 U.S.C. § 1985, asserted against Defendants Payne, Rhodes, Armendariz, and Oliver ("Claim Three"). *Id.* ¶¶ 60-78.

(4) "Complaint -4- Administrative Remedy Nos. 819653 & 834276": violation of the First Amendment, asserted against Defendants Payne, Rhodes, and Armendariz ("Claim Four"). *Id.* ¶¶ 79-82.

(5) "Complaint -5- Administrative Remedy Case Nos. 837376 and 831631": violations of the Fifth Amendment and 42 U.S.C. § 1985, asserted against Defendants Payne, Armendariz, Julian, Rhodes, and Martinez ("Claim Five"). *Id.* ¶¶ 83-92.

(6) "Complaint -6- Administrative Remedy Case No. 865846": violations of the First, Sixth, and Eighth Amendments, asserted against Defendants Payne and Armendariz ("Claim Six"). *Id.* ¶¶ 93-111.

(7) "Complaint -7- In violation of the First and Fifth Amendments, and 42 U.S.C. § 1985": violations of the First and Fifth Amendments and 42 U.S.C. § 1985, asserted against Defendant Connors ("Claim Seven"). *Id.* ¶¶ 112-15.[2]

From this lawsuit, Plaintiff seeks "[c]ompensatory damages in the amount of $250,000 from each Defendant;" and "[p]unitive damages in the amount of $250,000 from each Defendant." *Id.* ¶ 120. In the present Motion [#54], Defendants seek dismissal of all of Plaintiff's claims.

## II. Standards of Review

---

[2]  The allegations underlying these claims are discussed in detail to the extent necessary in the Analysis section below. The Court construes all of the well-pled allegations in the Amended Complaint [#46] in favor of Plaintiff. *See Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).

## A.  Fed. R. Civ. P. 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may move to dismiss a complaint for "lack of personal jurisdiction."  "The district court is given discretion in determining the procedure to employ in considering a motion to dismiss for lack of personal jurisdiction."  *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992) (internal quotations and citation omitted).  A plaintiff bears the burden of establishing personal jurisdiction, although at the preliminary stages of the litigation this burden is light.  *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).  Where a district court does not hold an evidentiary hearing before dismissing the case, the plaintiff "must only make a prima facie showing of personal jurisdiction."  *Melea, Ltd. v. Jawer SC*, 511 F.3d 1060, 1065 (10th Cir. 2007).  "The plaintiff may meet this burden 'by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant.'"  *Id.* (quoting *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007)).  In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(2), courts accept "as true all well-pled . . . facts alleged in [the] complaint."  *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citation omitted).

## B.  Fed. R. Civ. P. 12(b)(6)

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted").  "The court's function on a Rule 12(b)(6) motion is not to

weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n][ ]that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 552 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III. Analysis

**A.  Personal Jurisdiction**

Defendants seek dismissal of all claims asserted against Defendants Connors, Martinez, and Pierce based on lack of personal jurisdiction.  *Motion* [#54] at 86. Defendants argue that Plaintiff has not made a prima facie showing of general jurisdiction ("Plaintiff does not allege that these Defendants live, work, own property, or pay taxes in Colorado") or specific jurisdiction ("the Complaint makes no allegation that any of these Defendants had the requisite minimum contacts with Colorado").  *Id.*

To determine whether the court has personal jurisdiction over a defendant, "the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process."  *Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014) (quoting *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006)).  "Because Colorado's long-arm statute 'confers the maximum jurisdiction permissible consistent with the Due Process Clause . . . the first, statutory, inquiry effectively collapses into the second, constitutional, analysis.'"  *Dudnikov*, 514 F.3d at 1070.  Due process requires both that the defendant "purposefully established minimum contacts with the forum State" and that the "assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

The minimum contacts standard "may be satisfied by showing general or specific jurisdiction."  *Niemi*, 770 F.3d at 1348 (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159-60 (10th Cir. 2010)).

> General jurisdiction is based on an out-of-state defendant's 'continuous and systematic' contacts with the forum state, and does not require that the claim be related to those contacts. Specific jurisdiction, on the other hand, is premised on something of a quid pro quo: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts.

*Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (quoting *Dudnikov*, 514 F.3d at 1070). For general jurisdiction, "[t]he paradigm forum for the exercise . . . is the individual's domicile[.]" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). For specific jurisdiction, "the 'minimum contacts' standard requires, first, that the out-of-state defendant must have 'purposefully directed' [his] activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Dudnikov*, 414 F.3d at 1071 (quoting *Burger King*, 471 U.S. at 472). "In tort-based law suits . . . 'purposeful direction' has three elements: (a) an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state." *Niemi*, 770 F.3d at 1348.

Plaintiff does not argue that the court has general jurisdiction but does argues that he has satisfied the three elements, as articulated in *Niemi*, to assert specific jurisdiction over Defendants Connors, Martinez, and Pierce. As to element (a), Plaintiff states that "all of Plaintiff's claims allege an intentional act . . . to injure Plaintiff." *Response* [#62] at 11. As to element (b), Plaintiff states that "all of Plaintiff's claims except his first occurred when he was involuntarily committed to federal prison in Colorado." *Id.* Finally, as to element (c), "for the same reasons as [element] (b), Plaintiff is confined to the forum state and thus these injuries would be fully felt by Plaintiff while being unable to leave the forum state." *Id.*

### 1.    Defendant Connors

Defendant Connors is the Administrator of National Inmate Appeals in Washington, D.C. *Am. Compl.* [#46] ¶ 10. One claim is asserted against Defendant Connors (Claim Seven), which alleges violations of the First and Fifth Amendments and 42 U.S.C. § 1985 (Conspiracy to Interfere with Civil Rights). *See id.* ¶¶ 112-115. Plaintiff alleges that Defendant Connors unfaithfully investigated Plaintiff's complaints and discouraged Plaintiff from using the administrative complaint system with the foreseeable consequence that Plaintiff will continue to be injured by Defendants. *Id.* Further, Plaintiff alleges that Defendant Connors "[provided] responses of pro forma denials, intentionally inadequate investigations, each full of lies and cover-ups by [Defendant Connors], or promulgated, endorsed, or ratified by him." *Id.*

Defendants argue that the Court lacks personal jurisdiction over federal prison officials who have "regional and national supervisory responsibilities over facilities within a forum state." *Motion* [#54] at 85 (quoting *Hill v. Pugh*, 75 F. App'x 715, 719 (10th Cir. 2003)). In *Hill v. Pugh*, the Tenth Circuit Court of Appeals affirmed the district court's dismissal of claims against two BOP officials who had national supervisory responsibilities over USP-Florence. 75 F. App'x at 719. The Tenth Court found that the alleged conduct, i.e., that the BOP officials received administrative grievances and letters warning of the potential detrimental effects of ADX placement from the plaintiff and his attorney, fell "far short of the purposeful availment necessary to establish jurisdiction." *Id.*

In *McMillan v. Wiley*, 813 F. Supp. 2d 1238, 1246 (D. Colo. 2011), the Court found that despite the plaintiff alleging that the defendants "had direct knowledge of and approved the transformation of [p]laintiff's ADX housing unit into a solitary confinement 'control' unit"

that "such 'attempts to make out a case for personal jurisdiction over these defendants by arguing that each of them authorized or implemented [actions] knowing that the effects of these [actions] would be felt by [plaintiff] in Colorado' are insufficient to establish minimum contacts." *Id.* (citing *Hale v. Ashcroft*, No. 06-cv-00541-REB-KLM, 2007 WL 2350150, at *3 (D. Colo. Aug. 15, 2007); *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1534 (10th Cir. 1996)).

Similarly, because Plaintiff has not demonstrated that Defendant Connors's actions which were taken in Washington, D.C., establish minimum contacts with Colorado, the Court finds that Plaintiff's Claim Seven against Defendant Connors should be **dismissed without prejudice** for lack of personal jurisdiction. *See Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1216 (10th Cir. 2002) (stating that dismissals for lack of personal jurisdiction must be without prejudice).

### 2. Defendant Martinez

Defendant Martinez, at the pertinent time of the allegations, was an FBI Agent in San Antonio, Texas. *Am. Compl.* [#46] ¶ 9. Defendants state that Defendant Martinez was served in Texas. *Motion* [#54] at 86 (citing *Summons* [#17]). Plaintiff asserts only one claim against Defendant Martinez, i.e, Claim Five, asserting violations of the First and Fifth Amendments and 42 U.S.C. § 1985. *Am. Compl.* [#46] ¶¶ 83-92. In Claim Five, Plaintiff alleges that a hold was placed on a $400 deposit to Plaintiff's inmate deposit fund due to "fraudulent information manipulated" by Defendant Martinez (and the other four Defendants named under this claim). *Id.* ¶ 87. Furthermore, Plaintiff alleges that Defendant Martinez (and the other four Defendants named under this claim) "used the known lie of money

laundering . . . to oppress, punish, and persecute" Plaintiff. *Id.* ¶ 90. Finally, Plaintiff alleges that "[Defendants acted] in collusion and agreement with [Defendant Martinez and others]" through fabricated, manipulated, and falsified information to accuse Plaintiff of money laundering through Plaintiff's BOP commissary account. *Id.* ¶ 84.

Defendants argue that Plaintiff has not established personal jurisdiction over Defendant Martinez, but they do not point to case law which discusses the exercise of personal jurisdiction over a law enforcement official as opposed to a prison official. *Motion* [#54] at 83-86. Nonetheless, the Court agrees with Defendants' position that the Amended Complaint [#46] fails to allege any meaningful contacts by Defendant Martinez with the State of Colorado. In short, the Court finds that the Amended Complaint [#46] does not demonstrate how Defendant Martinez "purposefully availed" himself of the laws of Colorado.

The Supreme Court in *Walden v. Fiore*, 571 U.S. 277, 288 (2014), held that a police officer from Georgia lacked minimal contacts with the State of Nevada to support the exercise of personal jurisdiction, even if the officer knew that his allegedly tortious conduct in Georgia would delay return of funds to persons with connections to Nevada. In *Walden*, the Court found that "[the police officer] never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." Similarly, here, apart from the few, mostly conclusory allegations stated above, the Court is not presented with allegations to show that Defendant Martinez traveled to, conducted activities in, contacted anyone within, or sent anything to the State of Colorado. Under this precedent, the Court finds that Plaintiff has not shown that the Court can properly exercise personal jurisdiction over Defendant Martinez.

Accordingly, the Court **recommends** that Claim Five be **dismissed without prejudice** to the extent it is asserted against Defendant Martinez. *See Hollander*, 289 F.3d at 1216.

### 3. Defendant Pierce

Finally, Defendant Pierce was a SIS Technician in Leavenworth, Kansas. *Am. Compl.* [#46] ¶ 11. Defendants state that Defendant Pierce was served in Missouri. *Motion* [#54] at 86 (citing *Summons* [#17]). Plaintiff asserts one claim against Defendant Pierce in Claim One, asserting violations of his First, Fifth, and Eighth Amendment rights and 42 U.S.C. § 1985. In short, Plaintiff states that these asserted violations occurred in connection with Defendant Pierce's involvement in transferring and confining Plaintiff at the ADX facility in Colorado. Plaintiff states: "In June 1994, Defendant Pierce ordered Plaintiff transferred to the Special Housing Unit (SHU) because of a report from a confidential informant that there was a threat on Plaintiff's life." *Motion* [#54] at 27. Plaintiff alleges that "Defendant Pierce . . . told Plaintiff that he knew the threat was false, but would not release Plaintiff into the general population because of an order from unnamed government officials." *Id.*

Defendants cite *Gowadia v. Stearns*, 596 F. App'x 667, 670 (10th Cir. 2014), for the proposition that "it would run afoul of due process to conclude that whenever a prison official is involved in the transfer of an inmate, that official has subjected himself to the transferee state's jurisdiction and can be hauled—possibly across the country—into its courts." *Motion* [#54] at 86. The facts, as alleged in the Amended Complaint [#46], fit the Tenth Circuit's rationale enunciated in *Gowadia*, because Defendant Pierce is an SIS

based in Kansas, who merely participated in a decision to transfer Plaintiff to the ADX facility in Colorado. Regardless of whether the information was true or not, or whether Defendant Pierce engaged in a conspiracy or not, the Court finds that the bare allegations asserted against Defendant Pierce in the Amended Complaint [#46] are insufficient for finding that the Court may exercise personal jurisdiction over him. *See Melea*, 511 F.3d 1060 at 1069 (stating that "for personal jurisdiction based on a conspiracy theory to exist, the plaintiff must offer more than 'bare allegations' that a conspiracy existed, and must allege facts that would support a prima facie showing of a conspiracy").

Accordingly, the Court **recommends** that Claim One be **dismissed without prejudice** to the extent it is asserted against Defendant Pierce. *See Hollander*, 289 F.3d at 1216.

**B.    Statute of Limitations**

Defendants also argue that Claim Three and the remainder of Claim One are barred by Colorado's two-year statute of limitations. The Tenth Circuit has expressly held that "a *Bivens* action . . . is subject to the statute of limitations of the general personal injury statute in the state where the action arose." *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994) (citation omitted). Here, Colo. Rev. Stat. § 13–80–102(g) provides for a two-year statute of limitations. *White v. Tharp*, No. 06-cv-01179-EWN-KLM, 2008 WL 596156, at *6 (D. Colo. Feb. 29, 2008). Similarly, conspiracy claims brought under 42 U.S.C. § 1985 are also subject to a two-year statute of limitations. *Graham v. Taylor*, 640 F. App'x 766, 768 (10th Cir. 2016).

In connection with Claim One, Plaintiff alleges that from May 1994 through March

1995, prison officials ordered Plaintiff to the SHU and later transferred Plaintiff to USP-Florence under false pretenses, thereby violating his First, Fifth, and Eighth Amendment rights as well as 42 U.S.C. § 1985. *Am. Compl.* [#46] ¶¶ 23-53. Plaintiff argues that the earliest date Plaintiff learned his appeal was denied and his administrative remedies were exhausted occurred on April 25, 2017, and hence, the claim is timely filed. *Response* [#62] at 10.

In Connection with Claim Three, Plaintiff alleges that in March 2015, "Defendants falsely accused or knowingly facilitated the false accusations knowing they were false that [Plaintiff] used legal communication privileges to facilitate criminal activity" and that, as a result, "[r]estrictions were imposed on [Plaintiff's] general correspondence, phone calls, and visitations without legal cause." *Am. Compl.* [#46] ¶¶ 62-63. Plaintiff argues that the earliest date Plaintiff learned his administrative remedies were exhausted was July 5, 2016, and hence, this claim is also timely filed. *Response* [#62] at 10.

Defendants argue that no case law supports Plaintiff's assertion that the statute of limitations accrues only when administrative remedies are exhausted or denied, and the Court agrees. *Reply* [#63] at 4. The law does not allow tolling "during the exhaustion of administrative remedies." *Rosales v. Ortiz*, 325 F. App'x 695, 700 (10th Cir. 2009).

Federal law determines when a plaintiff's *Bivens* claim accrues. *Van Tu v. Koster*, 364 F.3d 1196, 1199 (10th Cir. 2007). Generally, "claims accrue and the statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Indus. Constructors*

*Corp.*, 15 F.3d at 969. "[I]t is not necessary that a claimant know all of the evidence ultimately relied on for the cause of action to accrue." *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 632 (10th Cir. 1993). The Court finds that Plaintiff's injuries were known to him at the times alleged in the Amended Complaint [#46] for each claim, i.e., no later than March 1995 for Claim One, and no later than March 2015 for Claim Three. Both of these dates are more than two years before the original Complaint [#1] was filed in April 2017. *See Fogle*, 435 F.3d at 1258.

When the dates provided in a complaint clearly demonstrate that the right to sue has been extinguished, "the plaintiff has the burden of establishing a factual basis for tolling the statute." *Aldrich v. McCulloch Props.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980). Plaintiff has not clearly made any specific arguments regarding tolling in the Amended Complaint [#46] or in his Response [#62] to Defendants' Motion [#54]. However, to the extent Plaintiff may perhaps be arguing a continuing violation theory, the Court notes that the Tenth Circuit has never extended this doctrine to actions under *Bivens* or 42 U.S.C. § 1983, including in the prison context. *See Taylor*, 640 F. App'x at 769 n.2.

With respect to Claim One, inmate transfer and classification decisions constitute single, discrete events to which the continuing violation doctrine does not apply. *Gambina v. Fed. Bureau of Prisons*, No. 10-cv-02376-MSK-KLM, 2011 WL 4502085, at *4 (D. Colo. Sept. 29, 2011) ("Cases from the District of Colorado have similarly found that inmate classification decisions constitute discrete events, each subject to its own statute of limitations rather than a 'continuing' one."); *Matthews v. Wiley*, 744 F. Supp. 2d 1159, 1169 (D. Colo. Sept. 13, 2010) (stating that because the plaintiff's "transfer to ADX in 1995 was clearly a single discrete event, the continuing violation doctrine does not apply").

With respect to Claim Three, Plaintiff alleges that he was notified of restrictions on his correspondence in March 2015. *Am. Compl.* [#46] ¶ 62. In the absence of an act by Defendants occurring within the limitations period which caused Plaintiff injury, it does not matter that the original restrictions were continued to be imposed. *See Hicks v. Podolak*, No. 12-cv-00334, 2014 WL 1715438, at *3 (D. Colo. Apr. 30, 2014) (finding due process claim time barred, even where inmate was held in segregation under "ongoing order," because "the continuing violation doctrine is triggered by continual unlawful acts, not by continual ill effects from the original violation").

Accordingly, the Court **recommends** that Plaintiff's Claim One be **dismissed with prejudice** to the extent it is asserted against Defendants Oliver and Julian.[3] The Court further **recommends** that Plaintiff's Claim Three be **dismissed with prejudice** in full. *See Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010) (stating that claims barred by the statute of limitations may be dismissed with prejudice because permitting amendment of those claims would be futile).

## C.    Qualified Immunity

With respect to the remaining claims, Defendants Payne, Armendariz, Julian, and Rhodes seek qualified immunity because they are sued in their individual capacities. *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 814-18 (1982). Raising a qualified immunity defense in a motion to dismiss "subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Sayed v. Virginia*, 744 F. App'x 542, 545-

---

[3] Claim One was also asserted against Defendant Pierce, against whom the Court recommended above that this claim be dismissed without prejudice on the basis of lack of personal jurisdiction.

46 (10th Cir. 2018) (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)).

A government official is entitled to qualified immunity from liability for civil damages when his or her allegedly unlawful conduct did not violate the plaintiff's statutory or constitutional rights which (1) were "clearly established" at the time of the conduct, and (2) would have been known to a reasonable person in the official's position. *Harlow*, 457 U.S. at 818. A government official is entitled to qualified immunity in "[a]ll but the most exceptional cases." *Harris v. Bd. of Educ. of Atlanta*, 105 F.3d 591, 595 (11th Cir. 1997).

The threshold inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.*

However, "if a violation could be made out on a favorable view of the parties' submissions," a court must "ask whether the right was clearly established." *Id.*; *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that although qualified immunity determination involves a two-part inquiry, if the plaintiff fails either inquiry reviewed in any order, no further analysis need be undertaken and qualified immunity is appropriate). A plaintiff may ordinarily show that the constitutional right was clearly established by identifying either (1) an on-point Supreme Court decision, (2) an on-point published Tenth Circuit decision, or (3) favorable "clearly established weight of authority from other courts." *See Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015). "However, we do not always require case law on point, and the Supreme Court has warned that officials can still be on notice that their conduct violates established law even in novel factual circumstances." *A.M. v. Holmes*, 830 F.3d 1123, 1135 (10th Cir. 2016) (internal quotation marks and

citations omitted). "We have therefore adopted a sliding scale to determine when law is clearly established." *Id.* "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Id.* at 1135-36. It is not necessary to show that "the very action in question has previously been held unlawful, [but] in the light of pre-existing law the unlawfulness must be apparent." *Id.* at 1136 (internal alterations and quotation marks omitted).

Finally, the Court notes that civil-conspiracy claims under 42 U.S.C. § 1985(3) are also subject to a qualified immunity defense. *N.E.L. v. Douglas County, Colorado*, 740 F. App'x 920, 931 n.22 (10th Cir. 2018) (citing *Bisbee v. Bey*, 39 F.3d 1096, 1102 (10th Cir. 1994)).

### 1.    Claim Five

In June 2015, Plaintiff's communications were restricted by prison officials and the only outside communications he was permitted were with his then-attorney, Mr. Kirkwood, but even those communications were deemed by the BOP as "non-privileged and non-legal." *Am. Compl.* [#46] ¶ 85. Defendant Armendariz told Plaintiff that because Plaintiff and Mr. Kirkwood were authorized to communicate, any funds put in Plaintiff's BOP commissary account by Mr. Kirkwood would not be encumbered or placed on hold. *Id.* ¶ 86. Plaintiff was told that any funds sent by anyone else would be placed on hold. *Id.*

In June 2015, Mr. Kirkwood wired $400.00 to Plaintiff's commissary account for Plaintiff's necessities, but the funds were immediately encumbered/placed on hold. *Id.* ¶ 87. Plaintiff asserts that Defendants Julian, Rhodes, Payne, and Armendariz accused Plaintiff of money laundering through his commissary account because Plaintiff had filed

administrative complaints against them. *Id.* ¶¶ 84, 88. Plaintiff asserts that these Defendants violated BOP policy for holding funds and investigating their source as set forth in the BOP's "Trust Fund Deposit Fund Manual." *Id.* ¶ 91. Plaintiff further asserts that he "does not owe any court fines, BOP fines, or taxes, and there is no Court Order to hold, encumber, or seize [his] property." *Id.* ¶ 92.

### a. Fifth Amendment

In short, Plaintiff argues that he was deprived of his procedural due process rights by the freezing of the $400 in his commissary account in June 2015. The Court "examine[s] procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the [government]; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (internal citations omitted). Here, there are no allegations that *any* procedure was employed in connection with the restriction of Plaintiff's funds, and so this analysis hinges on the first step, i.e., whether Plaintiff had a protected property interest in the $400.

To determine whether a plaintiff has a protected property interest, the Court must determine whether the "prison condition complained of presents 'the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest.'" *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir.1999) (quoting *Sandin v. Connor*, 515 U.S. 472, 486 (1995)). The inquiry focuses on the "nature of the deprivation" and not the "language of a particular regulation." *Sandin*, 515 U.S. at 481.

Plaintiff argues that he has a protected property right in the $400 in his commissary account based on "BOP policy for holding funds and investigating their source as set forth

in the BOP's "Trust Fund Deposit Fund Manual." *Am. Compl.* [#46] ¶ 91. Plaintiff disputes

that the $400 in his commissary account is contraband. *Id.* ¶¶ 85-87.

Before the Supreme Court's decision in *Sandin v. Connor* in 1995, many circuits,

including the Tenth Circuit Court of Appeals, had held that "prisoners had a protected

property interest in non-contraband funds held in inmate accounts." *Stanley v. McMillian*,

No. 12-cv-02944-PAB-CBS, 2014 WL 788059, at *2 (D. Colo. Feb. 26, 2014) (collecting

cases). *Sandin*, however, called those holdings into question. *See id.* In *Steffey v. Orman*,

461 F.3d 1218, 1221-23 (10th Cir. 2006), the Tenth Circuit held that an inmate did not have

a protected property interest in funds that were undisputedly contraband in violation of the

prison's rules and affirmed that "the property-interest due-process rights of inmates are to

be determined based on the nature of the deprivation in accordance with the 'atypical and

significant' deprivation analysis articulated in *Sandin.*" *Steffey*, 461 F.3d at 1223 n.4. In

*Clark v. Wilson*, 625 F.3d 686, 688 (10th Cir. 2010), prison officials froze an inmate's trust

account, without first notifying him, in response to a garnishment summons they had

received. The Tench Circuit noted that "the 'legitimate expectations' methodology" had

been "expressly abrogated by *Sandin*" and that defendants were entitled to qualified

immunity because "neither the Supreme Court nor any court of appeals had applied

*Sandin*'s 'atypical and significant hardship' test to the freezing of a prison trust account by

2007," when the challenged action had occurred. *Id.* at 691-92. Here, therefore, "[t]o

determine the nature of the property interest at stake in this case, the Court would have to

apply the rule announced in *Sandin* to inmate funds whose status as contraband is

disputed." *Stanley*, 2014 WL 788059, at *3.

However, the Court need not do so here because it finds that the law was not clearly

established as of June 2015, when the events underlying this claim occurred. Plaintiff points to two cases in opposition to Defendants' assertion of qualified immunity. *Response* [#62] at 9 (citing *Response* [#62] at 5). However, both *Willams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991), and *Muhammad v. Finley*, 74 F. App'x 847, 849 (10th Cir. 2003), were decided prior to 2007, at which point the Tenth Circuit has determined that the law in this area was *not* clearly established. *See Clark*, 625 F.3d at 691-92; *see also Clark v. Oakley*, 560 F. App'x 804, 808 (10th Cir. 2014) (discussing the holding of *Clark v. Wilson*). The Court notes that it does not appear that the law has become clearly established in the Tenth Circuit since 2007 and June 2015, when the relevant events in the present lawsuit occurred. Thus, in the absence of clearly established law that inmates have a protected property interest in funds whose status as contraband is disputed, Defendants Payne, Armendariz, Julian, and Rhodes are entitled to qualified immunity on this claim.

Accordingly, the Court **recommends** that the Motion [#54] be **granted** to the extent that the Fifth Amendment claim under Claim Five be **dismissed with prejudice**. *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (stating that dismissal with prejudice if appropriate if issues have been raised which, upon further investigation and development, would not raise substantial issues).

### b.    42 U.S.C. § 1985

Because the Court finds that Defendants Payne, Armendariz, Julian, and Rhodes are entitled to qualified immunity on the Fifth Amendment claim under Plaintiff's Claim Five, Defendants are also entitled to qualified immunity on Plaintiff's civil-conspiracy claim based on the alleged violation of this same right. *See N.E.L.*, 740 F. App'x at 931 n.22.

Accordingly, the Court **recommends** that the Motion [#54] be **granted** to the extent that Plaintiff's 42 U.S.C. § 1985 claim asserted under Claim Five be **dismissed with prejudice**. *Reynoldson*, 907 F.2d at 127.

**2.  Claim Two**

Between January 8 and May 5, 2015, Plaintiff filed Administrative Remedy Complaints against Defendants Rhodes, Payne, and Armendariz based on alleged theft of, total or partial destruction of, and excessive delay in delivering Plaintiff's U.S. mail, including newspapers, on repeated and continual occasions from 1995 through the present. *Am. Compl.* [#46] ¶ 55.  Plaintiff alleges that these three Defendants "act independently and cooperate in actual and tacit conspiracy to delay or destroy" Plaintiff's mail in violation of his First Amendment rights and 42 U.S.C. § 1985.  *Id.* ¶ 56.  Plaintiff states that Defendants Payne and Armendariz continued to be directly involved in delaying and destroying Plaintiff's U.S. mail as of the time this lawsuit was filed.  *Id.*  Plaintiff avers that these actions were conducted by these Defendants through their own discussions and agreements and asserts that they have therefore conspired to violate Plaintiff's rights due in-whole or in-part to his class membership.  *Id.*

Plaintiff states that BOP policy normally accounts for a two-day or similarly short delay between USP-Florence receiving mail and distributing said mail to inmates, but that these three Defendants frequently and typically delay mail for two weeks or longer, fail to deliver mail, or destroy mail.  *Id.* ¶ 57.  Plaintiff argues that these Defendants therefore violate (a) BOP Policy, (b) Mail Management Manual, (c) Program Statement 5800.10, and (d) ADX Institution Supplement FLM 5800.10D, which set a 36-hour limit on delays for

incoming U.S. mail and media. *Id.* ¶ 58.

Plaintiff states that these Defendants' interference with Plaintiff's U.S. mail is done to oppress him, cause him mental anguish and emotional distress directly, and to interfere with his outside relationships. *Id.* ¶ 59. As such, Plaintiff states that their actions are part of the campaign by BOP officials to break the will and spirit of Plaintiff. *Id.* According to Plaintiff, these actions and the psychological war against him are malicious, and knowingly and willfully designed and intended to sever and completely destroy Plaintiff's family ties, friendships, and relationships. *Id.*

### a.    First Amendment

Plaintiff characterizes this claim as a violation of his "right to receive U.S. mail and newspapers from friends, family, and media, limited only by legitimate penological concerns." *Id.* ¶ 54. Inmates retain their First Amendment rights even while incarcerated, *Turner v. Safley*, 482 U.S. 78, 84 (1987), but their rights may be restricted in ways that "would raise grave First Amendment concerns outside the prison context," *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). To state an arguable First Amendment claim, the plaintiff must provide adequate allegations to demonstrate that the actions of which he complains were not reasonably related to legitimate penological interests. *See Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010).

Plaintiff cites to *Gee v. Pacheco*, 627 F.3d at 1188, for the proposition that "restricting incoming mail to harass inmates or confiscating mail not in violation of prison policy" constitutes a plausible § 1983 claim.[4] *Response* [#62] at 4. While Plaintiff is correct

---

[4]    Despite Plaintiff's statement here, the Court notes, of course, that this is not a § 1983 case.

that *Gee* supports this general proposition, Plaintiff's allegations are so vague and conclusory that the Court cannot find he has stated a claim here. First, Plaintiff does not provide even one example of a specific time when his mail was excessively delayed or destroyed. He merely states that this occurred "on repeated and continual occasions from 1995 through the present." *Am. Compl.* [#46] ¶ 55. Second, Plaintiff does not provide even one example of a specific piece of mail which was excessively delayed or destroyed. He merely states that the mail consisted of "U.S. mail and newspapers from friends, family, and media." *Id.* ¶ 54. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (brackets in original; internal quotation marks omitted). Here, Plaintiff has done no more than tender naked assertions devoid of further factual enhancement, and accordingly, Defendants Rhodes, Payne, and Armendariz are entitled to qualified immunity.

Accordingly, the Court **recommends** that Plaintiff's First Amendment claim asserted under "Complaint -2-" be **dismissed without prejudice**. *Reynoldson*, 907 F.2d at 127.

### b. 42 U.S.C. § 1985

Because the Court finds that Defendants Rhodes, Payne, and Armendariz are entitled to qualified immunity on the First Amendment claim under Plaintiff's Claim Two, they are also entitled to qualified immunity on Plaintiff's civil-conspiracy claim based on the alleged violation of this same right. *See N.E.L.*, 740 F. App'x at 931 n.22.

Accordingly, the Court **recommends** that the Motion [#54] be **granted** to the extent that Plaintiff's 42 U.S.C. § 1985 claim asserted under Claim Two be **dismissed with**

**prejudice**.  *Reynoldson*, 907 F.2d at 127.

### 3.    Claim Four

Plaintiff regularly receives the San Antonio Express News newspaper, but he was denied access to the March 17, 2015 issue because of an article on page eight containing Plaintiff's name.  *Am. Compl.* [#46] ¶¶ 79-80.  Plaintiff asserts that Defendants Payne, Rhodes, and Armendariz "concealed this newspaper information because it contained legal information that could be used for [Plaintiff's] current and/or prospective legal matters."  *Id.* ¶ 80.  Plaintiff states that "[t]hese Defendants do not reject other publications such as Prison Legal News that regularly contain various names of USP-Florence prisoners."  *Id.* ¶ 82.  By barring Plaintiff's access to this one newspaper issue, Plaintiff argues that "they impeded, hindered, and interfered with [his] legal defense, and violated [his] constitutional rights to receive U.S. mail, newspapers, and research facts that affect his legal status at USP-Florence."  *Id.* ¶ 80.

Plaintiff asserts only a First Amendment violation in connection with this claim.  *See id.* ¶ 81.  "In the case of unprivileged incoming and outgoing prison mail, regulation by prison officials is essentially an administrative matter in which the courts will not intervene."  *United States v. Gordon*, 168 F.3d 1222, 1228 (10th Cir. 1999) (internal quotation marks omitted).  Plaintiff has not alleged that the mail delayed/destroyed was privileged mail.  *See LeVier v. Woodson*, 443 F.2d 360, 361 (10th Cir. 1971) (noting "narrow exception" for legal correspondence).  Nor has he offered either argument or allegations suggesting that this one newspaper was seized other than pursuant to normal prison policies regarding the interception, examination, and confiscation of incoming prison mail.  *See Thornburgh v.*

*Abbott*, 490 U.S. 401, 413 (1989) (restrictions on inmate mail justified if reasonably related to an important government interest).

Plaintiff points to two cases in opposition to Defendants' assertion of qualified immunity. *Response* [#62] at 9 (citing *Response* [#62] at 5). However, the Court finds that neither of these cases demonstrates that the law was clearly established as of March 2015. First, *Lewis v. Casey*, 518 U.S. 343, 351 (1996), is inapposite, because the case involved the sufficiency of a prison's law library or legal assistance program and its effect on access to the courts.[5] Second, *Gee v. Pacheco*, 627 F.3d at 1188, concerned (1) letters from persons outside the prison which were confiscated purportedly based on sticker and perfume violations, (2) outgoing, properly-stamped letters that were not processed by the prison for delivery, and (3) a single letter from the inmate's estranged sister. None of these situations are sufficiently close to Plaintiff's claim regarding a newspaper article containing his name so as to demonstrate that the law underlying the claim was clearly established as of March 2015 (when the newspaper was sent to Plaintiff in prison). The Court is likewise unaware of any case demonstrating that the law was clearly established in the Tenth Circuit prior to March 2015. Thus, in the absence of clearly established law that inmates have the right to obtain newspaper articles about themselves, Defendants Payne, Rhodes, and Armendariz are entitled to qualified immunity on this claim.

Accordingly, the Court **recommends** that the Motion be **granted** to the extent that

---

[5] The Court also notes that a claim asserting violation of the right of access to the court requires allegations of an actual injury. *See Lewis*, 518 U.S. at 351-52. Plaintiff's assertion of injury is pure conclusory speculation. *See, e.g., Am. Compl.* [#46] ¶ 80 (stating that, by barring Plaintiff's access to this one newspaper issue, Defendants "impeded, hindered, and interfered with [his] legal defense, and violated [his] constitutional rights to receive U.S. mail, newspapers, and research facts that affect his legal status at USP-Florence").

the First Amendment claim under Claim Four be **dismissed with prejudice**. *Reynoldson*, 907 F.2d at 127.

### 4.    Claim Six

Plaintiff asserts First, Sixth, and Eighth Amendment violations based on the following events. *Am. Compl.* [#46] ¶ 98. The Court here only addresses the First and Sixth Amendment claims and addresses the Eighth Amendment claim in Section III.D. below.

On May 27, 2016, Plaintiff and his current attorney, Mr. Jerold D. Friedman ("Friedman") had an attorney-client visit. *Id.* ¶ 94. Plaintiff "was put in full restraints for the visit, including blackbox handcuffs, belly chain, and shackles." *Id.* ¶ 95. "The attorney-client conference room did not have a 'pass-thru slot' to pass paperwork between attorney and client." *Id.* Thus, Plaintiff states that "the use of full restraints violate[d] BOP policy that requires full restraints only when there is a pass-thru slot." *Id.*

Plaintiff and Mr. Friedman "requested immediate relief including loosening or removal of the restraints, or relocating the attorney-client conference to a location where said restraints would not be used." *Id.* ¶ 96. Plaintiff asserts that "[t]he handcuffs with the blackbox restraints caused injuries to [his] hands and wrists including swelling and cuts." *Id.* ¶ 97. He "reported his injuries at that time to USP-Florence staff including Lt. Johnson at the visiting area, to the E Unit #1 Officer John [last name unknown], and to the attending physician assistant Huddleston." *Id.* "PA Huddleston treated [Plaintiff's] injuries with antibiotic ointment and large Band-Aids." *Id.* Plaintiff asserts that "[t]he blackbox handcuffs, belly chain restraints, and shackles are primarily used by USPFlorence staff to cause pain and injure inmates, which is cruel and unusual punishment in violation of the Eighth

Amendment, and to discourage attorney (legal) visits in violation of the First and Sixth Amendments." *Id.* ¶ 98.

Plaintiff asserts that he "posed no risk to institution safety nor [sic] security." *Id.* ¶ 99. He states that "[t]he pain and discomfort caused by the handcuffs, restraints, and shackles, distracted and interfered with [his] legal meeting and impeded his ability to communicate with his attorney." *Id.* Plaintiff "requested USP-Florence staff photograph his red and swollen hands and cuts upon them but USP-Florence staff denied each request . . . ."[6] *Id.* ¶ 101.

During the same attorney-client visit, Plaintiff asked to speak with Operations Lt. Johnson, and when he did so, "Lt. Johnson and two other USP-Florence officers ordered [Plaintiff] to step out of the attorney conference room, and they surrounded him menacingly." *Id.* ¶ 103. Plaintiff "showed Lt. Johnson the swelling and dark red color of his hands caused by the handcuffs restricting blood flow, and how the handcuffs were tearing, cutting and digging into his skin and wrists." *Id.* ¶ 104. Plaintiff states that "Lt. Johnson stated he could see the injuries but that he had to keep the restraints on the way they were," which Plaintiff says "amounts to torture." *Id.*

Plaintiff also "explained to Lt. Johnson that he had a stack of legal documents he needed to pass to his attorney." *Id.* ¶ 105. Plaintiff alleges that "Lt. Johnson then stated that [Defendants Payne and Armendariz] had ordered that [Plaintiff] be placed in the no passing attorney conference room even though suitable attorney conference rooms with

---

[6] Fourteen days after the incident, on June 9, 2016, Plaintiff "again requested photos of his injuries and he showed his injuries to Mr. Wyche, USP-Florence's 'E-Unit counselor' assigned to" Plaintiff, but his request was again denied. *Am. Compl.* [#46] ¶ 102.

the pass-thru slot were vacant and available." *Id.*

Plaintiff "then requested to speak to an Associate Warden or the Staff Attorney, Mr. Synsvoll so that [he] could get immediate authorization to pass his legal documents to his lawyer." *Id.* ¶ 106. Plaintiff "was then ordered to return to the attorney conference room." *Id.* Over an hour later, "Staff Attorney Synsvoll showed up, briefly spoke with Friedman, and then himself took [Plaintiff's] documents and delivered said legal documents to Friedman." *Id.* ¶ 107. Plaintiff asserts that "Synsvoll is not [his] attorney and has no right to handle [his] legal documents except through BOP procedures that are consistent with the U.S. Constitution." *Id.* Plaintiff states: "It is unknown whether Synsvoll looked through said documents or absconded with one or more documents while he transported them from [Plaintiff] to Friedman as he was out-of-sight for several moments during transport." *Id.*

### a.    First Amendment

In short, Plaintiff asserts that Defendants' actions were meant to "discourage attorney (legal) visits" in violation of the First Amendment. *Am. Compl.* [#46] ¶ 98. As noted above, to establish that he has been denied access to the courts, Plaintiff must demonstrate "actual injury." *See Lewis*, 518 U.S. 343, 349 (1996). Here, however, Plaintiff has merely provided conclusory allegations of injury. First, there is no indication that Plaintiff's attorney was actually discouraged from visiting him, given that he remains Plaintiff's attorney to this day. Second, there is no indication that Staff Attorney Synsvoll took any of Plaintiff's documents while transporting them between Plaintiff and Mr. Friedman—in fact, Plaintiff has not identified a single missing document nor offered anything but the purest of speculation that Mr. Synsvoll took any improper action with respect to the papers. Third, Plaintiff has alleged no actual injury to any lawsuit in which

he was involved, either criminal or civil, as a result of the events of May 27, 2016. In short, there are no allegations that Defendants Armendariz and/or Payne actually hindered Plaintiff's efforts to pursue a legal claim. Thus, Plaintiff has failed to state a claim under the First Amendment for denial of access to the courts, and Defendants Armendariz and Payne are entitled to qualified immunity.

Accordingly, the Court **recommends** that Plaintiff's First Amendment claim under Claim Six be **dismissed with prejudice**. *Reynoldson*, 907 F.2d at 127.

### b. Sixth Amendment

Plaintiff asserts that Defendants' actions were intended to discourage attorney visits. *See, e.g.*, *Am. Compl.* [#46] ¶ 98. The Sixth Amendment provides a number of guarantees regarding criminal trials, including the right to a speedy and public trial by an impartial jury, the right to confront witnesses, and the right to the assistance of counsel. U.S. Const. amend. VI. Plaintiff does not allege any defects in connection with a criminal trial and, to the extent he argues that Defendants Armendariz and Payne's actions were intended to discourage visits by his attorney, the only attorney mentioned is Plaintiff's attorney in the present civil action. *Am. Compl.* [#46] ¶ 94. Thus, Plaintiff does not allege any Sixth Amendment violations.

Accordingly, the Court **recommends** that Plaintiff's Claim Six be **dismissed with prejudice** to the extent it asserts a violation of the Sixth Amendment. *Reynoldson*, 907 F.2d at 127.

### D. *Bivens* Claim

Finally, the Court addresses Defendants' *Bivens* argument with respect to Plaintiff's

asserted Eighth Amendment violation under Claim Six against Defendants Payne and Armendariz.[7] "A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Gray v. Sorrels*, 744 F. App'x 563, 568 (10th Cir. 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (internal quotation marks omitted)). "These claims include both an objective and a subjective component." *Gray*, 744 F. App'x at 568 (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

*Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), "creates a cause of action only against federal officials in their individual capacities for money damages . . . ." *James v. Hamaker*, No. 15-cv-02425-GPG, 2016 WL 409433, at *1 (D. Colo. Feb. 3, 2016) (citing *Simmat*, 413 F.3d at 1231; *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001)). In *Bivens*, the United States Supreme Court "held that, even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures"

---

[7] The Court notes that most circuit courts appear to avoid resolving the issue of whether a *Bivens* claim exists when other grounds for resolving the underlying motion exist, such as failure to state a claim or qualified immunity. *See, e.g.*, *McGowan v. United States*, 825 F.3d 118, 123 (2d Cir. 2016) (stating in connection with the issue of whether a First Amendment *Bivens* remedy against BOP employee should be recognized: "We need not decide this difficult issue, however, because we conclude that [the plaintiff's] *Bivens* claim fails for the independent reason that [the] defendant . . . is entitled to qualified immunity."). Here, the Court notes (without deciding) that Defendants' qualified immunity argument on this claim *may* be insufficient, and therefore the Court addresses the issue of whether a *Bivens* remedy against an individual exists under the circumstances of this case on this Eighth Amendment claim. *See, e.g.*, *Stanton v. Furlong*, 73 F. App'x 332, 334 (10th Cir. 2003) (stating that the proper question in an Eighth Amendment excessive force claim based on handcuffing was whether the defendant had "acted maliciously and sadistically for the very purpose of causing harm rather than in a good-faith effort to maintain or restore discipline"); *but see Stevenson v. Cordova*, 733 F. App'x 939, 945-46 (10th Cir. 2018) (holding that an Eighth Amendment refusal-to-loosen-handcuffs claim was not clearly established as of February 2012 when asserted against a correctional officer who remained on the periphery of the incident and played no active role in restraining the plaintiff, despite the fact that the officer could hear the plaintiff's complaints about the handcuffs).

under the Fourth Amendment.  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017).  The Supreme Court has only twice since then recognized *Bivens* claims.  *Id.* at 1854-55.  In *Davis v. Passman*, 442 U.S. 228 (1979), "an administrative assistant sued a Congressman for firing her because she was a woman," and the Supreme Court "held that the Fifth Amendment Due Process Clause gave her a damages remedy for gender discrimination." *Id.*  In *Carlson v. Green*, 446 U.S. 14 (1980), "a prisoner's estate sued federal jailers for failing to treat the prisoner's asthma," and the Supreme Court "held that the Eighth Amendment Cruel and Unusual Punishments Clause gave him a damages remedy for failure to provide adequate medical treatment."  *Id.* at 1855.  "[E]xpanding the *Bivens* remedy is now a 'disfavored' judicial activity," and the Supreme Court "has 'consistently refused to extend *Bivens* to any new context or new category of defendants.'"  *Id.* at 1857 (quoting *Iqbal*, 556 U.S. at 675; *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)); *see also Wilkie v. Robbins*, 551 U.S. 537, 549-550 (2007) (summarizing the basic considerations underlying past Supreme Court decisions declining to create *Bivens* claims and applying a two-part analysis to the creation of *Bivens* liability).

The first step in determining whether a *Bivens* claim can proceed is to determine whether the case presents a new *Bivens* context.  *Ziglar*, 137 S. Ct. at 1859-60.  "The proper test for determining whether a case presents a new *Bivens* context is as follows." *Id.* at 1859.  "If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new."  *Id.*  In other words, the Court should determine whether the claims at issue differ meaningfully from "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an

inmate's asthma." *Id.* The test is more than simply determining "whether the asserted constitutional right was at issue in a previous *Bivens* case," and, if so, "whether the mechanism of injury was the same mechanism of injury in a previous *Bivens* case." *Id.* at 1859. Rather, as a non-exhaustive list of examples, "[a] case might differ in a meaningful [enough] way [to make a given context a new one] because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Id.* at 1860.

The Court has little trouble determining that the Eighth Amendment issue raised in Plaintiff's case constitutes a new context, because the only one of the trio of *Bivens* cases which addressed the Eighth Amendment was *Carlson v. Green*, 446 U.S. 14 (1980), in which, as noted above, a prisoner's estate sued federal jailers for failing to treat the prisoner's asthma, as a result of which the prisoner died. Here, Plaintiff's claim is focused on the use of handcuffs with blackbox restraints causing non-permanent injury to his hands and wrists on one occasion during an attorney-client conference. Given the Supreme Court's detailed discussion regarding the low threshold for finding a new context, *see Ziglar*, 137 S. Ct. at 1859-60, the Court finds that this case bears little resemblance to *Carlson* and therefore that this case constitutes a new context. *See Ziglar*, 137 S. Ct. at 1864 (stating that "even a modest extension is still an extension"); *see also, e.g.*, *Lovett v. Ruda*, No. 17-cv-02010-PAB-KLM, 2018 WL 4659111, at *8 (D. Colo. Sept. 28, 2018)

(finding that an Eighth Amendment conditions-of-confinement claim based on failure to provide adequately nutritional food arose in a "different context" from *Carlson*'s denial-of-medical-care claim); *Mercer v. Matevousian*, No. 1:18-cv-00265-DAD-BAM (PC), 2018 WL 3917969, at *4 (E.D. Cal. Aug. 14, 2018) (finding that an Eighth Amendment conditions-of-confinement claim based on failure to provide handicap-accessible shower after the plaintiff fell arose in a "different context" from *Carlson*'s denial-of-medical-care claim).

Thus, the Court must address whether there are alternative remedies available to Plaintiff. In *Davis v. Passman*, 442 U.S. at 242, the Supreme Court held that persons who have "no [other] effective means" of redress "must be able to invoke the existing jurisdiction of the courts for the protection of their justiciable constitutional rights." However, Plaintiff has at least three alternative, existing processes to protect his Eighth Amendment interests here.

First, he may seek injunctive relief. *See Malesko*, 534 U.S. at 74. Unlike the *Bivens* remedy, which courts "have never considered a proper vehicle for altering an entity's policy, injunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally." *Malesko*, 534 U.S. at 74. While injunctive relief remains available, the Court is unconvinced that money damages are necessary to deter unconstitutional conduct. *See, e.g.*, *K.B. v. Perez*, 664 F. App'x 756, 759 (10th Cir. 2016) (recognizing that suits for injunctive relief constitute alternative means for preventing unconstitutional conduct in the prison context). In fact, the existence of a monetary remedy is simply not required by applicable precedent or American jurisprudential principles to foreclose *Bivens* relief. *See, e.g.*, *Schweiker*, 487 U.S. at 421-22 ("The absence of

statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation."); *Ajaj v. Fed. Bureau of Prisons*, No. 15-cv-00992-RBJ-KLM, 2017 WL 219343, at *3 n.8 (D. Colo. Jan. 17, 2017) (stating that alternative remedial mechanisms "need not compensate a plaintiff with monetary damages in order to be adequate alternatives" (citing *Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 862-83 (10th Cir. 2016)); *see also Wilkie*, 551 U.S. at 550 ("[A]ny freestanding damages remedy for a claimed constitutional violation [based on *Bivens*] has to represent a judgment about the best way to implement a constitutional guarantee; it is not an automatic entitlement no matter what other means there may be to vindicate a protected interest, and in most instances we have found a *Bivens* remedy unjustified."). "[T]he Court has no reason to doubt that an injunction would be sufficient to prevent defendants from engaging in unconstitutional conduct in the future – indeed, that is the very purpose of prospective relief." *Lovett*, 2018 WL 4659111, at *8.

Second, Plaintiff may seek a remedy under the mandamus statute, 28 U.S.C. § 1361. *See Custard v. Allred*, No. 13-cv-02296-REB-CBS, 2015 WL 328626, at *4 (D. Colo. Jan. 26, 2015) (declining to extend a *Bivens* damages remedy where alternative avenues of relief existed, in part because "Plaintiff could also pursue a remedy through the mandamus statute"). For mandamus to issue, there must be a clear right to the relief sought, a plainly defined and peremptory duty on the part of respondent to do the act in question, and no other adequate remedy available. *Hadley Mem'l Hosp., Inc. v. Schweiker*, 689 F.2d 905, 912 (10th Cir. 1982). Plaintiff must also show that his right to the writ is "clear and indisputable." *See Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S.

296, 309 (1989) ("To ensure that mandamus remains an extraordinary remedy, petitioners must show that they lack adequate alternative means to obtain the relief they seek . . . and carry the burden of showing that [their] right to issuance of the writ is clear and indisputable[.]") (citation omitted); *United States v. Carrigan*, 778 F.2d 1454, 1466 (10th Cir. 1985). If he had so chosen, Plaintiff could have listed the mandamus statute on the Tenth Circuit's prisoner complaint form under the "Jurisdiction" section. *See Lovett*, 2018 WL 4659111, at *9.

Third, Plaintiff may seek remedy for his concerns through the prisoner grievance system. *Simmat*, 413 F.3d at 1237; 28 C.F.R. §§ 542–542.19 (describing the BOP Administrative Remedy Program through which prisoners can seek formal review of any aspect of confinement). Inmates in Plaintiff's position have full access to remedial mechanisms established by the BOP, including grievances filed through the BOP's Administrative Remedy Program. *See* 28 C.F.R. § 542.10 (explaining this program as providing "a process through which inmates may seek formal review of an issue which relates to any aspect of their confinement"). This program provides yet another means through which allegedly unconstitutional actions may be brought to the attention of the BOP and prevented from recurring. *See, e.g.*, *Custard*, 2015 WL 2407103, at *6 (holding that alternative remedies existed which militated against extending *Bivens* damages, in part because the plaintiff could "also pursue administrative relief through the BOP's administrative remedy program, and apparently has done so"). This method has the added benefit of limiting judicial interference with prison management while maintaining a method of redress for valid constitutional claims. *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 566-67 (1974) ("The operation of a correctional institution is at best an extraordinarily difficult

undertaking. . . . [Correctional officers] must have the necessary discretion without being subject to unduly crippling constitutional impediments."). "The Court is also unaware of any authority establishing that a plaintiff's lack of success in the BOP's Administrative Remedy Program renders that remedy inadequate." *Lovett*, 2018 WL 4659111, at *9. "The *Bivens* analysis appears to focus on the adequacy of remedies in the abstract rather than on a particular plaintiff's track record in pursuing relief." *Id.* (citing *Wilkie*, 551 U.S. at 552-53 (noting that the plaintiff had "an administrative, and ultimately a judicial, process for vindicating virtually all of his complaints" even though he had "mixed success"); *Ajaj*, 2017 WL 219343, at *2 & n.6 (finding that the plaintiff had alternative remedies, such as filing a suit for injunctive relief or filing a grievance as part of the BOP's administrative remedy program).

In short, the Court finds that these alternative remedies foreclose the creation of a *Bivens* remedy for Plaintiff's Eighth Amendment claim. "[T]here is no reason to rely on a court-created remedy, like *Bivens*, when Congress has created an adequate means for obtaining legal redress." *Simmat*, 413 F.3d at 1231.

The Court also examines whether any special factors exist to counsel against the creation of a *Bivens* remedy. The Court may create a new *Bivens* remedy only if there are no special factors counseling hesitation against the creation of such a remedy. *Wilkie*, 551 U.S. at 550. "[T]he inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Ziglar*, 137 S. Ct. at 1857-58. "Thus, to be a 'special factor counselling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative. *Id.* at 1858. The plain meaning of the language suggests that

the threshold for finding special factors is quite low:

> The only relevant threshold—that a factor "counsels hesitation"—is remarkably low. It is at the opposite end of the continuum from the unflagging duty to exercise jurisdiction. Hesitation is a pause, not a full stop, or an abstention; and to counsel is not to require. "Hesitation" is "counseled" whenever thoughtful discretion would pause even to consider.

*Arar v. Ashcroft*, 585 F.3d 559, 574 (2d Cir. 2009).

In the case at hand, the factors counseling hesitation are more than sufficient to meet this low threshold. In the context of prison management, the Supreme Court recognizes the value of balancing inmates' interests against the administrative needs of the prison, noting that a degree of flexibility and accommodation of prison discretion is required. *See, e.g.*, *Wolff*, 418 U.S. at 566-67 (stating that correctional institutions "must have the necessary discretion without being subject to unduly crippling constitutional impediments[.]"). Courts owe substantial deference to the professional judgment of prison administrators, and absent concerns that prison inmates will be otherwise unable to redress their claims, this Court hesitates to create a new cause of action that may be brought against prison officials for monetary damages. *See Beard v. Banks*, 548 U.S. 521 (2006) (Justice Breyer, with two Justices and the Chief Justice concurring, two Justices concurring in the judgment).

As discussed previously, prisoners already have a variety of ways to pursue Eighth Amendment claims, and denying *Bivens* claims for money damages will not deny prisoners effective relief for their claims. On the other hand, creating a superfluous way for prisoners to gain relief by suing prison employees individually will interfere with prison management and add to the Court's already heavy burden of prisoner litigation. *See K.B.*, 178 F. Supp. 3d at 1112 ("[E]xtending *Bivens* in this case would potentially permit a huge number of

claims from families of offenders seeking to challenge particular conditions of offenders' confinement or particular conditions of offenders' probation/supervised release. The Court finds this potential result to be a special factor that counsels against creation of a new *Bivens* remedy in this case."). These special factors are sufficient to counsel hesitation in creating a new *Bivens* remedy.

A *Bivens* damages remedy "is not an automatic entitlement . . . and in most instances we have found a *Bivens* remedy unjustified." *Wilkie*, 551 U.S. at 550. As both of the above factors weigh against extending *Bivens* to Eighth Amendment claims in the context of federal prisons, the Court agrees with Defendants Payne and Armendariz that here, there is no legal basis to recognize any claim for damages against them on these underlying allegations with respect to Plaintiff's Eighth Amendment claim.

Accordingly, the Court finds that there is no *Bivens* remedy under the Eighth Amendment under the circumstances of this case, and therefore the Court **recommends** that Plaintiff's Eighth Amendment claim asserted under Claim Six be **dismissed with prejudice**. *See Reynoldson*, 907 F.2d at 127.

## IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **RECOMMENDED** that the Motion [#54] be **GRANTED** and that this action be **DISMISSED** as outlined above.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is

assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: January 31, 2019

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge